ALVA R. ROBINSON ET AL., APPELLANTS, V. JOHN T. BRESSLER ET AL., APPELLEES.

FILED FEBRUARY 5, 1932. NOS. 27855, 27856.

*Kingsbury & Kingsbury* and *Nesbitt, Goodwin & Nesbitt,* for appellants.

*C. H. Hendrickson, J. J. McCarthy* and *E. J. McCarthy, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

On July 21, 1919, the plaintiffs as vendors made a contract for the sale of 635 acres of land situated in Dixon county, Nebraska, with A. R. Davis as purchaser. The sale price was $160,000, and $20,000 was paid at the execution of the contract. The contract provided that the vendors should convey and assure to the party of the second part in fee simple, clear of all incumbrances, by good and sufficient warranty deed and abstract of title showing of record good and perfect title to the land. The contract was to be performed March 10, 1920.

Although the contract was made in the name of A. R. Davis as purchaser, it appears that others were jointly interested with him in the purchase and it was so understood between all of the persons who claimed an interest in the purchase. There is no dispute that the vendors recognized defendant John T. Bressler as being one of the purchasers

and he principally transacted the business on behalf of the purchasers. Whether the other persons were or were not interested to the extent claimed by defendants at the trial does not seem to have any material bearing in the determination of the case. The trial court found that it was understood and agreed by all the parties that those interested as purchasers were A. R. Davis, John T. Bressler, William E. Von Seggern and John T. Bressler, Jr., each having a one-fourth interest.

At the time for performance of the contract, it developed that the purchasers had arranged a resale of one quarter section of the land, the northwest quarter of section 20, township 28, range 14, to one Thomas Erwin at the price of $50,000, and that the vendors were not then able to give good title to any of the land. Thereupon it was arranged that the purchasers should complete their sale of the one quarter section to Erwin, who would accept a conveyance made directly from the plaintiffs and a bond in the nature of an indemnity procured by John T. Bressler, indemnifying Erwin against any defects or imperfections in the title; that the purchasers should make additional payments on the purchase price, go into possession of the premises, and that the vendors should proceed to correct and perfect the title.

At this time the purchasers did make to the vendors two additional payments of $50,000 each upon the purchase price. The conveyance was made to Erwin and he settled with his vendor Bressler by paying half of his purchase price and executing for the remaining $25,000 a mortgage maturing March 1, 1940, at 5 per cent. interest, and thereupon entered into full possession and control of the land. As to this part of the land the trial court found that the defendants sold the same to Erwin receiving therefor the sum of $50,000, and that by agreement of all the parties a deed was executed by plaintiffs for this land directly to Erwin, and as that is a separate and completed transaction and apparently beneficial and agreeable to all parties concerned, that part of the contract is allowed to stand and

is not affected by the decree, except that the defendants were required to account, in the accounting made by the court, for the full amount of the purchase price.

There was an abstract of title made and certified as of date January 28, 1920. It seems to have been taken and understood then by all of the parties, as was the fact, that the abstract did not show good title of record in the vendors. There were certain defects apparent which all recognized must be corrected, although it does not appear that at that time there had been any real examination of the title or opinion by a title examiner.

The title record showed a warranty deed covering the south half of section 17 by Amanda G. Lee and husband to O. E. Clark, duly executed and acknowledged in June 1881, and recorded July 2, 1881. It also showed that the patent covering the whole section of land, that is, the north half of section 20, and the south half of section 17, was issued to Elijah N. Robinson and recorded January 24, 1919, although dated October 10, 1870. It was also a fact that in the meantime Elijah N. Robinson, patentee, had died in January, 1909, a resident of the state of West Virginia, his will dated in 1903 had been probated in that state in February, 1909, but no probate proceedings had ever been had in this state as affecting these lands. The vendors were claiming title and assuming to convey the same as heirs and devisees of said Elijah N. Robinson. It further appeared that John T. Robinson, son of Elijah N. Robinson and one of the devisees in his will, died in September, 1909, intestate, a resident of the state of Indiana, and leaving surviving him a widow and two daughters, and that no proceedings for the probate of the estate of said John T. Robinson in this state as affecting said land had been had.

There were other matters connected with the title which were more or less discussed between the parties, but the principal things concerned these two estates and the Amanda G. Lee deed to O. E. Clark and, later on, the matter of inheritance taxes as against the two estates.

While these conditions existed and after the time stipulated in the contract for its performance, the vendors did proceed in April, 1920, to institute proceedings in the county court of Dixon county for the probate of the foreign will of Elijah N. Robinson, which proceedings resulted in a decree of that court on May 3, 1920, admitting the instrument to probate in that court, and ordering that regular administration be dispensed with and that the real estate described in the petition filed herein "be and the same hereby is assigned in accordance with the terms and conditions of the last will and testament of the said E. N. Robinson, deceased." At about the same time the vendors also instituted in the county court of Dixon county proceedings for the determination of heirship in the matter of the estate of John T. Robinson, deceased, which proceedings resulted in a decree of that court May 10, 1920, adjudging that Ida B. Robinson, his widow, and May R. Cross and Clio Bond, as children, were the sole and only heirs at law of John T. Robinson, deceased, and as such were owners of an undivided interest in the Dixon county land. In the meantime, in August, 1919, and in April, 1920, respectively, the widow, Ida B. Robinson, and Clio Bond, with her husband, had executed deeds conveying this land or their interest in it to the plaintiffs; and it appears from the testimony, although not in the abstract, that there was a contract between these vendors and the remaining heir, May R. Cross, as to which a controversy arose between the parties and litigation was had in the courts of West Virginia, which finally terminated in the vendors procuring a deed from May R. Cross and her husband executed and filed of record in January, 1922.

It should also be stated that at the time of the arrangement between the parties when performance of the contract was due, the defendant John T. Bressler, although not having title to the property in question, the deed for all of which except the Erwin tract being held in the possession of the First National Bank of Wayne, Nebraska, executed a mortgage to the plaintiffs for $25,000, upon the

southeast quarter of section 17 and, a year later, paid the interest and $5,000 of the principal sum represented by such mortgage. The mortgage debt was made in five different notes of equal amount maturing annually, the first in 1921.

Mr. C. F. Barnes, husband of a daughter of Elijah N. Robinson, was principal spokesman and correspondent on behalf of plaintiffs and John T. Bressler on the part of defendants. The plaintiffs did nothing further in the way of perfecting their title, but urged the payment of the balance due of the purchase price, which was now represented by the mortgage just referred to and a balance of $15,000, on the original contract. The defendants made some other payments of interest, but occasionally insisted that they could not handle the land because the title was defective and they were not able to pay because of the deflation in land market and values. Plaintiffs insisting upon further payments the defendants, on or about April, 1923, submitted the abstract for examination and opinion as to title to Fred S. Berry, an attorney at Wayne, Nebraska. Mr. Berry gave his written opinion as to the title under date of April 13, 1923, and it was soon thereafter transmitted to Mr. Barnes as representing the plaintiffs. Nothing further was done, however, by plaintiffs in correction of the title. They insisted that it had already been made good. The defendants made no further payments on account of the purchase price. Negotiations, however, in a sort of a desultory way continued between the parties until the fall of 1926, during which time defendant Bressler made one or two offers to take the property subject to the claimed defects of title except inheritance taxes, upon the making of a specified discount from the balance of the purchase price, but nothing was accomplished and in July, 1929, the plaintiffs filed a petition in the district court for Dixon county for the purpose of foreclosing said mortgage of $25,000, and the following November filed their petition in said court for the purpose of foreclosing the contract of sale and purchase and recovery of the bal-

ance due thereon. These are the two suits that are now here for determination.

The defendants set up in each suit the contract of purchase and proceedings had under it, the defects of title as they claim them to be, and claimed a rescission of the contract and cancelation of the mortgage. They further allege that the plaintiffs were nonresidents of the state of Nebraska and own no property therein except that involved in this controversy, and ask that they be allowed a lien upon the property for a return of the purchase price theretofore paid which should be decreed to them, and offer to restore possession to the plaintiffs.

The trial court consolidated the two actions, heard them together and determined them in one decree. Also during the pendency of the proceedings, A. R. Davis having previously died, his executrix and heirs were made parties defendant and Von Seggern and Bressler, Jr., appeared and answered, so that all of the parties were before the court.

Some objection was raised by plaintiffs to the matter of consolidation of the cases and the appearance therein of the other defendants as parties in interest under the contract of purchase, but as these were matters within the discretion of the trial court, which discretion we cannot see has in any wise been abused, and there is nothing to show that the plaintiffs were prejudiced thereby, we do not think they merit further attention.

The trial court found generally for defendants and that the equities were with them, and that plaintiffs had not acted with such diligence, fairness and regard of the rights of others as is generally required by courts of equity, did not perform their contract, and that defendants were entitled to a rescission thereof. The court further found as is hereinbefore stated as to the separability of that part of the contract and transaction which had led to the conveyance to Thomas Erwin, and that the plaintiffs did not have a marketable title to the land and induced the defendants to make the payments and execute the mortgage involved herein upon the understanding that the plaintiffs

would diligently proceed to perfect their title; that defendants have been in possession of the real estate under that condition and have collected the rents and profits therefrom. The court then proceeds to make an accounting of the amounts paid by defendants on account of the purchase price and of the amounts involved in the Erwin transaction and amount unpaid of the purchase price and of rents and profits received by the defendants and finds that there is a balance due of $117,199, which should be returned to the defendants, the contract and mortgage canceled, and making said balance a lien upon the land, except the Erwin quarter, in favor of the defendants. The court also made suitable provisions for the distribution of the proceeds as between the parties defendant and in reference to settlements with tenants in possession concerning certain improvements on the property, and generally a quite comprehensive decree for the disposition of all interests and distribution thereof.

The plaintiffs make some further objection to the decree in that it provided that the amount adjudged to be returned on account of the purchase price was made a lien upon the property. As a basis for this it appears that the plaintiffs were nonresidents of this state and had no other property within the state. Under the circumstances of the case, we hold that in case of rescission such a provision in the decree is entirely proper. 27 R. C. L. 627, sec. 383; *Elterman v. Hyman,* 192 N. Y. 113, 127 Am. St. Rep. 862; *Everett v. Mansfield,* 148 Fed. 374, 8 Am. & Eng. Ann. Cas. 956.

The real question upon which the case turns is the sufficiency of plaintiffs' title; and the questions remaining in plaintiffs' showing in that regard are as to the effect, if any, that should be given to the deed by Amanda G. Lee to O. E. Clark, the insufficiency, if any, in the matter of the probate proceedings concerning the estate of Elijah N. Robinson, and the matter of the inheritance taxes.

Of course, there are other features discussed in the briefs, and in connection with the title, none of which per-

haps in themselves would be sufficient justification for re-
fusal of the title, but which in the aggregate should go
into the scale in determining the question of plaintiffs' dil-
igence, fairness and regard for the rights of others to en-
title them to the relief asked, which in this case would
approximate specific performance of the contract, and
should be adjudged on that basis.

As illustrative of the preceeding statement, long after
these cases had been commenced, and on the eve of trial,
the plaintiffs did undertake some further compliance with
defendants' objections to title by procuring and recording
in the county records an affidavit of Alva R. Robinson cov-
ering certain historical features of the proceedings, but
the particular part, if any, thereof being the statement
which undertakes to show the death of the wife of Elijah
N. Robinson. Also the affidavit of Alice B. Barnes which
discusses the relationship of the parties and makes an
identification as to names. Also another affidavit of Alva
R. Robinson which undertakes to show possession on the
part of himself and his coplaintiffs and of Elijah N. Rob-
inson their ancestor and that neither Amanda G. Lee nor
O. E. Clark had or claimed possession of the premises.
There is also attached to the abstract, but not shown as
one of the entries thereon nor shown to have been filed
or recorded, a certificate of Abe Montgomery, clerk of the
county court of Brooke county, West Virginia, purporting
to delineate the proceedings had in that court and the reg-
ularity thereof in the matter of the estate of Elijah N.
Robinson. The plaintiffs urge that they should have the
benefit of these things upon the doctrine that they were
apparent before the trial and decree and that it is suffi-
cient if they tender a good title at any time up to the time
of trial, relying upon the authority of the case of *Seaver v.
Hall*, 50 Neb. 878. There doubtless are circumstances, as
there were in the case of *Seaver v. Hall, supra,* where it
is equitable to allow a vendor the benefit of such showing;
but the plaintiffs have insisted at least since 1926, and
did insist as late as the filing of their reply in these cases,

that the title they had tendered was good and sufficient. They further urged at the trial that the defendants had no right of rescission because of having entered into possession of the land and had waived the same thereby as well as by execution of the mortgage which is involved in this suit.

All these matters were for the equitable consideration of the court along with other features in the case.

Upon the part of the defendants it was contended in reference to the proceedings for the probate of the will of Elijah N. Robinson, and an inspection of the record shows the contention well founded, that the proceedings did not, either such as were had in the state of West Virginia or those in this state, show, nor did either court determine, any question as to the wife or widow of Elijah N. Robinson, deceased, or whether she survived him. The record of the West Virginia court shows that certain persons who are named as parties in interest appeared and subjected themselves to the jurisdiction of the court, but it makes no attempt to determine whether those were all the parties interested and makes no mention or determination as to any surviving widow. In the probate proceedings in Nebraska upon the foreign will, there is an allegation in the petition that he left no widow surviving; but the court makes no finding in that regard, and its decree is that the real estate is assigned according to the terms and provisions of the will, which will upon its face gives to the widow an interest in the premises.

Another question raised is as to the deed by Amanda G. Lee. It is contended by the plaintiffs that this deed is simply a stray, or the deed of an interloper, not otherwise connected with the chain of title, and that therefore it amounts to nothing and should be given no consideration. This proposition should be considered as it existed in reference to this particular title. There are instances, of course, where, there being a chain of title, some stray deed which appears on record and having no connection with the title is deserving of but little consideration; but

at the time of this purchase, the contract for which was made in July, 1919, this deed was the only instrument which had been on record purporting to affect the title, except the patent. The patent itself had been recorded less than six months before this contract of purchase was entered into. The patentee had been dead for ten years when it was recorded and it had not been recorded during his lifetime although dated in 1870. The deed by Amanda G. Lee to O. E. Clark was regularly executed, acknowledged and entitled to be recorded, and stood for nearly 40 years as the only muniment of title appearing on the records for that tract of land which covered half the acreage involved in the contract of purchase. In this situation and with the plaintiffs residing in a distant state and claiming, not by any conveyance, but under the law of wills, and with nothing on record in their behalf until after this contract was by its terms to be performed, it is not unreasonable that the purchaser should require some special assurance in reference to his title.

There are cases which hold that the deed of a stranger does not constitute a cloud upon the title. This matter of cloud on title has been before the courts so much and in so many different ways that it has become a term with which to conjure. Largely because courts of equity had so circumscribed its meaning and application, this state and many states have enacted laws for the quieting of titles which cover instances where the instrument would not be recognized under the earlier equity practice as a cloud upon the title.

Because of the general adoption of registration laws, whereby the records became so universally and entirely relied upon to show the character of the title, and the undeniable fact that often instruments of record not recognizable as clouds under the existing equity practice did nevertheless actually adversely affect the title and impair its value, severe criticism of the earlier doctrine was offered by an eminent authority in this language:

"While this doctrine may be settled by the weight of

authority, I must express the opinion that it often operates to produce a denial of justice. It leads to the strange scene, almost daily in the courts, of defendants urging that the instruments under which they claim are void, and therefore that they ought to be permitted to stand unmolested, and of judges deciding that the court cannot interfere, because the deed or other instrument is void, while from a business point of view every intelligent person knows that the instrument is a serious injury to the plaintiff's title, greatly depreciating its market value, and the judge himself who repeats the rule would neither buy the property while thus affected nor loan a dollar upon its security. This doctrine is, in truth, based upon mere verbal logic, rather than upon considerations of justice and expediency." 4 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1399.

It has followed that legislative enactments have broadened the powers and duties of the courts in reference to such matters, and the courts themselves have come to a fuller recognition of the requirements of modern business pertaining to record titles. *Holland v. Challen,* 110 U. S. 15; *McGuinness v. Hargiss,* 56 Wash. 162; *Kinsman v. Spokane,* 20 Wash. 118, 72 Am. St. Rep. 24; *Broderick v. Cary,* 98 Wis. 419; *Palmer v. Yorks,* 77 Minn. 20; *Moores v. Clackamas County,* 40 Or. 536.

By statutory provision (Comp. St. 1929, sec. 76-215) the deed under consideration was entitled to be recorded, and it, or the record thereof, was receivable in evidence without further proof, and it is declared (Comp. St. 1929, sec. 76-237) that no conveyance of lands is void for the reason that at the time of its execution such lands are in the possession of another claiming adversely.

The attorney who examined the title was also a witness in the case. He is and has been for years a member of the bar of this state, recognized both locally and generally throughout the state as a lawyer of experience and of high standing, integrity and ability. We do not mean to hold that the opinion of counsel is controlling in a case of this

kind for the purpose of determining whether the title is good or bad, but we recognize that it is the usual practice for persons dealing in property of this nature to apply to attorneys having some knowledge and experience in that line and to rely upon the advice given them. The court should and does consider the good faith opinion of counsel as a material fact in such matters. Such opinion that a title is unmarketable may or may not in itself be sufficient to create a doubt which would justify a refusal to accept the title. The importance and value of an opinion in a particular case must depend upon the counsel and the circumstances under which he is acting. *Howe v. Coates,* 97 Minn. 385, 114 Am. St. Rep. 723; *Cummings v. Dolan,* 52 Wash. 496, 132 Am. St. Rep. 986, and note 1043; *Walker v. Gillman,* 127 Mich. 269.

A marketable title means a title free from reasonable doubt both as to matters of law and fact—a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and ready to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept. *Todd v. Union Dime Savings Institution,* 128 N. Y. 636; *Howe v. Coates,* 97 Minn. 385, 114 Am. St. Rep. 723.

There is also for consideration the matter of the inheritance tax which might perhaps have been compensated for or obviated, by an abatement from the purchase price, and yet there is no reason why the purchaser should be put to the necessity of himself having a determination made by the proper tribunal to find and assess the proper amount of inheritance tax. As to the matter of the estate of Elijah N. Robinson, it appears that during the course of the trial of this case one of the abstracts was removed from among the exhibits and an entry made thereon showing the payment in November, 1921, of an inheritance tax in the matter of that estate; but there is no showing anywhere in reference to an inheritance tax in the estate of John T. Robinson, deceased. We cannot say that the conclusion of the counsel in this case was wrong.

We hold that the claimed defects in the title asserted by the defendants and hereinbefore discussed are sufficient to render the title unmarketable, and that they, remaining uncorrected for several years and until after the commencement of these suits to enforce completion of the purchase, warranted the refusal by the defendants and the allowance by the court of the rescission of the contract.

There remains for further consideration the matter of the accounting by the court and the provisions resting thereon. This we have carefully considered, and while the theory upon which the court made the accounting is recognized and is applicable in some cases, yet the practical working out of it in this case does not seem to do justice between the parties. The court took for computation the various payments that had been made on the purchase and computed interest thereon at 7 per cent. per annum up until the time of trial, charging the plaintiffs with the total amount. It then determined from the evidence the amount of rents and profits received by the defendants during the same period, computing interest in the same way thereon, and upon the $50,000 realized from the Erwin sale, and charged the defendants with that amount, striking a balance therefrom the result of which is $117,-199, for which decree was entered. When it is considered that the parties themselves had by their contract fixed the value of the property at $160,000, and that the Erwin quarter had been eliminated by the acts of both parties, it does not seem right that the plaintiffs should by any computation become chargeable for so much of an excess in favor of the defendants who during the time retained possession and received the rents and profits from the whole property. The parties were upon an equal basis as far as dealing with the property was concerned, and while they did not proceed with such diligence as to entitle them to the full measure of relief that the law sometimes provides, it does not seem that the defendants should be allowed to receive the whole use of the property, plus a considerable amount for the use of the purchase price. The

aggregate amount of interest included in such accounting and charged against plaintiffs is something in excess of $95,000, and the aggregate amount of interest included in the accounting and charged against the defendants is something in excess of $41,000. We think that the accounting may be made upon a much simpler basis and more nearly approximating justice. There appears to be no occasion for the computation of interest at all up to the time of trial. By their voluntary acts the defendants had possession of the property and plaintiffs had possession of $125,000 of the purchase price which had been paid to them. Plaintiffs are not entitled to have interest upon the unpaid balance of the contract price because they had not perfected their title and tendered it so as to entitle them to recover the balance of the purchase price; but, as against the use of the property by the defendants, the plaintiffs are justly entitled to the use of so much of the money as had been paid to them. Both were also entitled to the permanent elimination of the $50,000 on account of the Erwin land. This would leave, not making any allowance to Bressler on account of the $2,000 commission, a balance of $75,000, to the return of which defendants are equitably entitled, and which they should receive with interest thereon from the date of the decree of the trial court as and for a return of the purchase price.

The judgment and decree of the trial court will therefore be and hereby is modified in this particular by reducing the amount of $117,199, therein provided to the sum of $75,000, and eliminating the accounting as made in said decree, but otherwise approving and affirming the decree of the trial court in all its provisions.

AFFIRMED AS MODIFIED.