IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

REINKE V. PERRY-SMITH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RYAN REINKE, APPELLANT,

V.

VICTORIA K. PERRY-SMITH, APPELLEE.

Filed February 7, 2023.    No. A-22-236.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Melanie J. Whittamore-Mantzios and Andrew D. Wurdeman, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellant.

Braden W. Storer and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Ryan Reinke appeals from the district court for Lancaster County which denied Reinke's request for specific performance of a real estate purchase agreement between Reinke and Victoria K. Perry-Smith and awarded Perry-Smith liquidated damages of $15,000. For the reasons that follow, we affirm.

## BACKGROUND

Perry-Smith owned a commercial property which was identified as 4721 Douglas Circle (the property). The property was further described as "LPR Industrial Tract Lot 3" and it contained an industrial building that had been split into two units. Perry-Smith and her husband bought the property in 2001. They ran a hazardous material cleanup business out of one unit, and they allowed

- 1 -

the existing tenant to remain in the other unit. The hazardous materials business ceased operating when Perry-Smith and her husband divorced in 2008, and Perry-Smith was awarded the property through the divorce proceedings. Thereafter, the original tenant continued to rent one unit and the other unit essentially turned into storage space for Perry-Smith. In addition to equipment and supplies leftover from the business, Perry-Smith had begun storing personal property in the building.

Reinke first approached Perry-Smith in October 2016 to discuss purchasing the property. Reinke visited the property and negotiations were had, but the parties failed to agree on a price and thus parted ways without a deal. Reinke then reached out to Perry-Smith in early February 2017, and sought to reopen negotiations on the property. After some preliminary discussions via text message, the parties met in person on February 28, 2017, and signed a purchase agreement for the property. According to the agreement, Reinke was to purchase the property for $187,500 with a $15,000 earnest money deposit. The deal was set to close 30 days later on March 28, and Reinke was scheduled to take possession of the property on April 1. Reinke immediately tendered a check for $15,000, which Perry-Smith promptly delivered to the title company where it remained in escrow at the time of trial.

Prior to signing the purchase agreement, Reinke communicated to Perry-Smith that he would need possession of the property within 30 days due to the expiration of an existing lease. Perry-Smith initially indicated there was "no way" she would be able to clear the property within 30 days. Reinke then offered Perry-Smith an "assurance" that he would dispose of anything left on the property when he took possession. With that assurance, Perry-Smith felt comfortable agreeing to the expedited closing. Aside from Reinke's assurance to dispose of any leftover items, Perry-Smith did not understand their agreement to pertain in any way to the contents of the building.

Operating on that assumption, Perry-Smith rented a storage unit and started to clear what she could from the property. At some point, Perry-Smith also listed certain items for sale on Craigslist. Reinke met Perry-Smith at the property at least one additional time around the first week of March 2017, to inspect the tenant's side of the property. On March 27, Perry-Smith went to the title company office to finalize her portion of the closing paperwork, and Reinke was supposed to do the same on the following day. Perry-Smith testified that, at that point, she believed she had done everything she needed to do in order to close the deal: she had signed everything she needed to sign and she had cleaned out the building to the best of her ability under the 30-day time constraint.

While she was at the title company office, Perry-Smith missed a call from an unknown number. Perry-Smith returned the call and was "taken aback" to learn that it was Reinke and he was "very upset" at her for having sold items on Craigslist. Reinke believed they had a "verbal agreement" that Reinke would dispose of any leftover items in exchange for an unspecified list of "business items" that Perry-Smith would leave on the property. According to Reinke, such "other business items" were intended "to offset [Reinke's] costs for disposing and cleaning up the rest of the property." Citing this dispute over the contents of the building, Reinke refused to close on March 28, 2017, as scheduled. Reinke knew that the substance of the alleged verbal agreement was not included in the written purchase agreement, so he felt he needed some time "to re-evaluate, with some legal advice."

The next communication between the parties was on April 7, 2017, when Perry-Smith texted Reinke to determine his intentions with respect to the property. Reinke responded with a demand for a "complete list of what you sold out of the building. . . . Complete with prices and phone numbers so my attornies [sic] can verify." Perry-Smith then clarified her understanding that Reinke purchased only "the building" and not the contents thereof, to which Reinke simply replied, "The attornies [sic] are ready to file paperwork." The next communication Perry-Smith received from Reinke was a letter from Reinke's attorneys dated April 20, 2017.

The April 20 letter articulated Reinke's position that the parties' agreement "included, or [Perry-Smith] otherwise promised or represented, that [Reinke] would be entitled to the contents inside the building." The letter further represented that Reinke was then "ready and willing to close the sale" on the condition that the purchase price "be adjusted to reflect the amounts you received for the contents that have been sold." Perry-Smith responded to the letter via email on April 28, 2017. Perry-Smith emphasized that the purchase agreement contained no mention of the building's contents and reiterated that she did not recall any verbal agreement to leave certain items. Acknowledging that there had obviously been a misunderstanding between the parties, Perry-Smith offered to simply cancel the transaction and return Reinke's $15,000 deposit.

Perry-Smith received no response from Reinke or Reinke's attorneys until nearly 18 months later. On October 18, 2018, Reinke sent Perry-Smith a text message asking how Perry-Smith would like to proceed with respect to the property. In response, Perry-Smith simply informed Reinke that the title company needed both of them to submit letters agreeing to cancel the sale. Without any additional comment, Reinke asked Perry-Smith for the title company's phone number and later confirmed that he found the number himself. Such appears to have been the last direct communication between the parties.

Reinke attempted to schedule a new closing for mid-November 2018, but Perry-Smith was never advised of that attempt and no closing occurred. There was brief mention of another letter sent by Reinke's attorneys in April 2019, and then Perry-Smith was served with Reinke's complaint in June 2019. Reinke filed his complaint on June 20, 2019, alleging that he "was, and still is, ready, willing and able to close under the terms of the Purchases [sic] Agreement." Reinke further alleged that Perry-Smith had repeatedly "failed and refused" to perform her obligations under the agreement despite Reinke's demands. Accordingly, Reinke sought a court order requiring Perry-Smith to close under the terms of the purchase agreement.

In answer, Perry-Smith denied the pertinent allegations in Reinke's complaint and counterclaimed for liquidated damages in the amount of $15,000. Perry-Smith alleged that it was Reinke who failed to perform according to the terms of the agreement when he failed to close on March 28, 2017, or within a reasonable time thereafter. Accordingly, Perry-Smith requested the court award her the $15,000 earnest money deposit pursuant to a provision in the agreement allowing for the seller to retain the earnest money deposit as liquidated damages in the event that the buyer "fails to consummate this purchase according to the terms of this agreement."

The district court held a bench trial on February 3, 2022, wherein both Reinke and Perry-Smith testified. At trial, Reinke abandoned any claim to the contents of the building and sought to enforce the purchase agreement as written without regard to the alleged verbal agreement. Reinke acknowledged that he refused to close on the date set in the agreement, but

Reinke argued that his October 2018 text message exchange with Perry-Smith demonstrated his readiness to close within a reasonable period of time.

On March 3, 2022, the district court entered an order denying Reinke's request for specific performance and granting Perry-Smith's request for liquidated damages. The district court specifically noted that it found Perry-Smith's testimony to be credible. The court found that the terms of the agreement were clear and that Reinke failed to perform his obligations on the date specified in the agreement or within a reasonable time thereafter. The court concluded that Reinke failed to meet his burden to prove he was entitled to specific performance and thus denied his request. Having found that Reinke failed to perform according to the terms of the agreement, the court also granted Perry-Smith's counterclaim for liquidated damages. Reinke appealed.

ASSIGNMENTS OF ERROR

Reinke assigns that the district court erred in (1) failing to award Reinke specific performance of the purchase agreement and (2) awarding the $15,000 earnest money deposit to Perry-Smith.

STANDARD OF REVIEW

An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Ficke v. Wolken*, 291 Neb. 482, 868 N.W.2d 305 (2015).

On appeal from an equity action, when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Id.*

ANALYSIS

*Specific Performance.*

The specific performance of a contract by a court of equity is not generally demandable or awarded as a matter of absolute legal right but is directed to and governed by the sound legal discretion of the court, dependent upon the facts and circumstances of each particular case. *Tedco Development Corp. v. Overland Hills, Inc.*, 200 Neb. 748, 266 N.W.2d 56 (1978). The burden is primarily on the party seeking specific performance to show his right in equity and good conscience to the relief sought. *Id.* The evidence which entitles a party to specific performance must be clear, satisfactory, and unequivocal. *Id.*

Specific performance will not be granted where enforcement would be unjust and may be denied where the party seeking it has failed to perform. *Id.* The failure or inability or refusal to carry out the terms of the contract at the time when performance is due will ordinarily be grounds for refusing specific performance, since specific performance will not generally be decreed in favor of a party who has himself been in default. *Id.* (citing 71 Am. Jur. 2d, Specific Performance, § 60).

The Nebraska Supreme Court stated in *Tedco Development Corp. v. Overland Hills, Inc.*, 200 Neb. at 755, 266 N.W.2d at 60 (quoting 71 Am. Jur. 2d, Specific Performance, § 63):

[I]n the ordinary cases of sales of realty, the general object being to make a sale for an agreed sum, the time of payment is regarded in equity as formal, and as meaning only that the purchase shall be completed within a reasonable time, and substantially according to the contract, regard being had to all the circumstances.

In the ordinary contract for the sale of real estate, equity will not regard time as of the essence unless expressly stipulated or an intention to do so is otherwise clearly manifested by the agreement as a whole. See *Tedco Development Corp. v. Overland Hills, Inc., supra* (citing *Dodge v. Galusha*, 151 Neb. 753, 39 N.W.2d 539 (1949)). When a contract expressly provides for a specific closing date, performance is normally due within a reasonable time after the date mentioned. *Frenzen v. Taylor*, 232 Neb. 41, 439 N.W.2d 473 (1989).

Regard being had to all the circumstances of this case, Reinke has failed to meet his burden to prove that he was entitled to specific performance of the purchase agreement. Reinke agreed to purchase the property for $187,500 on February 28, 2017. The terms of the agreement were clear and memorialized on a purchase agreement furnished by Reinke. At Reinke's urging, the parties expressly provided that closing would occur 30 days later on March 28, 2017. At the time of closing, Perry-Smith had completed everything necessary to close according to the terms of the purchase agreement. Reinke, however, refused to proceed with the closing.

Reinke testified that he refused to close because he wanted legal advice on his options regarding the alleged verbal agreement. Having done so, Reinke initially sought to use the alleged verbal agreement to negotiate a lower purchase price. However, Perry-Smith refused and proposed they simply cancel the transaction. Reinke then waited 18 months, at which point he determined to revive the original transaction, apparently without regard to the intervening delay and Perry-Smith's expressed intention to cancel the sale.

Under these circumstances, we agree with the district court that Reinke failed to perform his obligation under the agreement on the date expressly provided or within a reasonable time thereafter. In light of that and the surrounding circumstances, we conclude that Reinke has failed to prove that he is entitled to specific performance of the purchase agreement. Thus, we affirm the district court's denial of Reinke's request for specific performance.

*Liquidated Damages.*

Reinke does not challenge the provision in the agreement allowing for Perry-Smith to retain the $15,000 earnest money deposit in the event that Reinke "fails to consummate this purchase according to the terms of this Agreement." Rather, Reinke argues that he did not fail to perform according to the terms of the agreement because he was "at all relevant times ready to tender the purchase price to Perry-Smith and made reasonable efforts to obtain a closing date." Brief for appellant at 17-18. As discussed above, we disagree. Rather, we agree with the district court that Reinke failed to perform according to the terms of the agreement and Perry-Smith was thus entitled to liquidated damages in the amount of $15,000.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.