Ross and others, Appellants, vs. KUNKEL and wife, Respondents.

*May 2—June 6, 1950.*

HUGHES, J., dissents.

For the appellants there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Richard J. O'Melia.*

For the respondents there was a brief by *Irving Lowe,* attorney, and *A. L. Skolnik* of counsel, both of Milwaukee, and oral argument by *Mr. Lowe.*

FRITZ, C. J.    Upon the trial of the issues under the pleadings the evidence established the following undisputed facts. On June 20, 1948, the plaintiffs, Ross and his wife (hereinafter called the "Rosses"), were the owners under a land contract of lot No. 1, block No. 9 in the plat of Miramar, a subdivision on a lake in Walworth county. The lot as platted is fifty feet in width and one hundred forty-five feet in depth; and there is a cottage with other improvements on the lot. On June 20, 1948, Rosses entered into an exclusive listing contract with the plaintiff Sullivan, a real-estate broker, for the sale of the property, which is described in the listing contract as being sixty by one hundred fifty feet. On August 9, 1948, Sullivan's salesman, Elmer G. Tomson, showed the defendants, Chester A. Kunkel and his wife, the property. Tomson paced off the width and said it was sixty feet wide, which he thought it was; and Kunkel then paced off the width and said it was about sixty feet and he was satisfied that the lot was big enough for him. On August 9, 1948, defendants signed an "Offer to Purchase" submitted by Tomson, which, in connection with a description of the property, provided:

". . . Ross lake cottage in the Miramar subdivision, county of Walworth, Wisconsin, more particularly ·described as: Lake cottage, three rooms and washroom built of field stone at Potters Lake, having a frontage of about sixty feet, with a depth of about one hundred fifty feet" at $4,600 "on the following terms and conditions: $300 down, leaving balance of $4,300 tendered herewith, and the balance of forty-three hundred dollars ($4,300) as follows: $2,300 upon acceptance, the remainder in cash at closing. . . . All moneys paid under this contract shall be retained by Floyd J. Sullivan in a customer's trust account in First Wisconsin National Bank,

in the city of Milwaukee, until the termination of this agreement. Should the undersigned buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the seller, be forfeited and shall be paid by Floyd J. Sullivan to the seller as liquidated damages, subject to deductions of brokers' commission and disbursements. Should the seller be unable to carry out this agreement by reason of a valid or legal defect in title which the buyer is unwilling to waive, the deposit hereunder shall be returned to the buyer."

On August 9, 1948, $20, and on August 10, 1948, $280, were paid as earnest money by defendants to Tomson, and he informed Rosses of the offer, and it was accepted by them and Tomson notified defendants of such acceptance. On August 11, 1948, defendants paid $2,300 to Tomson in accordance with the terms of the offer to purchase, and he then gave a key to the house to defendants, although the offer to purchase provided:

"Possession-occupancy of premises shall be delivered to buyer *on closing*. It is understood that no persons other than the owner are in possession-occupancy of premises."

On August 13, 1948, Rosses authorized Sullivan to obtain the abstract of title for the purpose of turning it over to defendants, and he forwarded it to a bank, which on defendants' application approved a loan for $2,000. But that abstract was for only a fifty-feet-wide lot, and it was extended only to April 25, 1946. Later it was extended to October 21, 1948. In the "Offer to Purchase" the date set for closing the transaction was September 15, 1948, "or at such other time and place as may be designated in writing by the parties hereto." In September defendants inquired as to the size of the lot and notified Sullivan that they insisted on the full sixty feet. November 13, 1948, was then mutually set for closing.

Sullivan testified that on November 13, 1948, defendants were present; that he was in a position to close at that time; that he had a warranty deed from Rosses to defendants in his possession and the abstract had been brought up to date and

was in possession of the bank; that the transaction was not closed on November 13th as the defendants informed Sullivan they thought it necessary to have that additional ten feet of property; and that he tendered a deed for the property to the defendants, exclusive of the ten feet, and they did not accept it. On cross-examination Sullivan testified that the first time he was advised that defendants wished the return of their money and had terminated their agreement was a half hour after they left his office on November 13, 1948, and he had a call from an attorney, Irving Lowe, who asked, "Are you now in position to tender this ten feet?" that Sullivan said, "Not as yet, they just left my office, but I am positive I can get it;" and that Lowe said, "I think they have soured on this thing completely." On redirect examination, Sullivan testified that on December 11, 1948, he was in a position to close, and had in his possession a warranty deed to defendants from Rosses; that the bank had the abstract approved and informed him they would be willing that morning to turn over $2,000 for the deed; and that Sullivan had in his possession the additional ten feet of property that defendants had made a request for; but that defendants were not present.

On the trial of the action in September, 1949, plaintiffs tendered warranty deeds from Sullivan to the defendants for the fifty-feet-wide lot No. 1, and for the adjacent ten feet of lot No. 2, respectively; but no abstract of title or policy of title insurance for the adjacent ten feet was ever offered to defendants. In addition to the undisputed facts stated above, the court found (so far as material on this appeal) upon competent evidence the following facts:

At the time the "Offer to Purchase" was signed by the defendants they had not been advised and did not know the legal description of the property according to the plat. But prior to the time the parties met on November 13, 1948, the defendants had learned that the property which Rosses owned did not have a frontage of sixty feet, and defendants had communicated with Sullivan with respect thereto and requested a

survey. On November 13th defendants at Sullivan's office were offered a deed of lot No. 1, and they refused to accept such deed on the ground that it did not convey sixty feet of frontage and insisted upon a conveyance which included that amount of frontage. They were informed that Rosses only owned lot No. 1, but that the broker could procure the additional ten feet and would do so within a few days. On the same day defendants telephoned Sullivan they objected to the delay in closing the transaction, and in a letter to Sullivan their attorney, Lowe, stated:

"We are now taking a position that the lapse of time between the date set for closing, September 15, 1948, and the date of this letter, November 13, 1948, is an excessive amount of time and that your principal, Mr. Ross, has failed in any way to accept the offer which was made by Mr. and Mrs. Kunkel. Accordingly, at this time request is made that you return to Mr. and Mrs. Kunkel through my office the sum of twenty-six hundred ($2,600) dollars. Opportunity will be afforded you to make such repayment by the 19th day of November, 1948. You are advised that in the event such sum of money is not returned that Mr. and Mrs. Kunkel will then proceed to take such steps as are necessary to protect their interests."

On December 9, 1948, Sullivan stated in a letter to Chester A. Kunkel:

"We are still in a position to give you the additional footage you requested, and inasmuch as the bank has approved your mortgage we can no longer justify a further delay to the seller. If it is convenient, we would like to have you come into our office Saturday morning, December 11, 1948, before 10 a. m. . . ."

The court found further: ". . . that between November 13, 1948, and December 9, 1948, and at no time thereafter up to and including the trial of this action did the plaintiffs present or furnish the defendants for examination any abstract of title of the additional ten feet. That the terms of the contract entitled the defendants to an abstract of title of the entire tract of sixty feet, which tract would include the additional ten feet." Upon the trial plaintiffs offered in evidence a warranty deed, dated November 27, 1948, by Joseph A. Ross and his wife to Sullivan of said lot No. 1, and

also a warranty deed by Sullivan to the defendants of said lot No. 1, dated June 10, 1949, and also a warranty deed by Sullivan to the defendants of the east ten feet of lot No. 2 of block No. 9 of said subdivision, dated June 10, 1949. On November 13, 1948, Sullivan had a deed from the plaintiffs Ross to defendants covering lot No. 1, but not including the additional ten feet, and that this deed was tendered to defendants. Title to the additional ten feet was acquired subsequent to November 13, 1948, and prior to December 9, 1948, but the exact date of such acquisition is not shown by the evidence, and there is no showing as to whether such title was acquired in the name of the plaintiffs Ross or Sullivan. ". . . that the defendants did not waive the personal warranties of the plaintiffs, Ross, and did not consent to accept the warranties of the plaintiff Sullivan in lieu of the warranties of the plaintiffs Ross. . . . that the demand for the return of the sum of $2,600 paid by the defendants to the broker was made by letter to the broker on November 13, 1948."

The facts stated above warranted the court's conclusions:

That the offer to purchase signed by defendants on August 9, 1948, was accepted and constituted a valid contract binding on both parties. That defendants signed the offer to purchase under the belief as well as the representation of the salesman that they were purchasing a cottage and lot with a frontage of sixty feet, and that the tendering of the deed of November 13, 1948, by plaintiffs for only fifty feet was therefore not a substantial compliance with the contract. That in respect to said shortage the vendors were entitled, under the terms of the contract, to ninety days in which to perfect the title or to acquire same and thereby perfect it. That notwithstanding defendants' acts prior to December 9, 1948, the mere securing title to the additional ten feet within the ninety-day period did not satisfy the requirement as to performance by the vendors for the reason that the vendees were entitled to receive and vendors were obligated to furnish an abstract of title to the ten feet, and before the vendees could be required to close the transaction, they were entitled to examine such abstract and satisfy themselves respecting the title as provided in the contract; and Rosses breached the contract by their failure to timely furnish to the defendants an abstract of title to

the ten feet. That defendants were entitled to a warranty deed from Rosses and were not obliged to accept as a substitute for such deed the warranties and covenants of Sullivan as contained in Sullivan's deeds dated June 10, 1949. That plaintiffs are not entitled to specific performance of the offer to purchase and are not entitled to damages for breach of contract by the defendants.

Sullivan's tender to defendants at the time of the trial of his warranty deeds to lot No. 1 and to the adjacent ten feet of frontage which Rosses never owned was not a sufficient tender or performance under Rosses' contract with defendants. They were entitled, under their contract with Rosses, to receive conveyance from them for the sixty feet of frontage, with the warranties bargained for, and were not obliged to accept as a substitute the warranties of a third person. As stated in *Buntrock v. Hoffman,* 178 Wis. 5, 14, 189 N. W. 572,—

"Ordinarily a purchaser of land under a land contract is entitled to a deed from the vendor, and he is not obliged to accept as a substitute for such deed the deed of a third person. The personal responsibility of the grantor may or may not become valuable to the grantee in the event of a breach of the warranties or of the terms and conditions of the deed. Such personal covenant, however, may be waived by the acts of the parties or by their mutual consent." *Petre v. Slowinski,* 251 Wis. 478, 483, 29 N. W. (2d) 505.

As in the case at bar there is no such mutual consent and there has been no such waiver by the acts of the defendants or their consent, plaintiffs are not entitled to specific performance of the offer to purchase or the recovery of damages for breach of contract. Moreover, Rosses' failure to furnish to defendants an abstract of title for all of the sixty feet of frontage, which Rosses were to convey to them under the contract, also was a breach of contract upon which defendants had a right to stand and demand the return of the $2,600 received from them by Sullivan. *Breen v. Arnold,* 157 Wis. 528, 531, 147 N. W. 997.

Consequently, as it was apparent on November 13, 1948, and thereafter, including the time of the commencement of their action by Rosses, that they were unable to convey all of the sixty feet of frontage, and that they failed to furnish an abstract for all of such frontage, the defendants were entitled to consider the contract breached by Rosses, and to demand and recover from Sullivan the $2,600 which he received from defendants to hold in trust under the provisions of the "Offer to Purchase." As stated in *Kons v. Pallange,* 244 Wis. 64, 72, 11 N. W. (2d) 634,—

"Where the vendor cannot convey title as agreed by the contract of sale, the vendee may refuse further payments of the purchase price and recover the amounts paid thereon." See also *Neff v. Rubin,* 161 Wis. 511, 515, 154 N. W. 976; *Breen v. Arnold, supra.*

In relation to said sum of $2,600, defendants alleged in their answer:

"That although demands have been made of the plaintiff Floyd J. Sullivan for the return of the earnest money in the sum of $2,600 have been repeatedly made to said plaintiff he has failed, refused, and neglected to return the earnest money paid by these defendants as set forth in 'Exhibit A' of defendants' answer.

"Wherefore, defendants demand that this action be dismissed and further for the return of the earnest money deposited with the plaintiff Floyd J. Sullivan, and for such other and further relief as the court may deem just and equitable in the premises."

Notwithstanding those allegations and defendants' demand for the return of said sum of $2,600, the court denied granting such relief on the ground that the "defendants in their answer did not *counterclaim* for the return of this money." However, on plaintiffs' appeal from the judgment entered herein the defendants by timely notice duly requested a review under sec. 274.12, Stats., of the court's ruling denying defendants' demand in their answer for judgment for their recovery of said sum of $2,600 from Sullivan.

The court erred in denying the demand in defendants' answer for such affirmative relief. The fact that defendants did not file a counterclaim for the return of the $2,600 intrusted to Sullivan did not impair their right to the recovery thereof in this action. By specifically demanding in their answer "the return of earnest money deposited with the plaintiff Floyd J. Sullivan," they were entitled in this action to an adjudication as to such affirmative relief, under the provisions in sec. 263.15 (1), Stats. 1947, that,—

"A defendant . . . may have affirmative relief against . . . the plaintiff, or part of the plaintiffs, . . . but in all such cases relief must involve or in some manner affect the contract, transaction or property which is the subject matter of the action or relates to the occurrence out of which the action arose. Such relief may be demanded in the answer, which must be served upon the party against whom the same is asked. . . ."

As Sullivan was a plaintiff in this action, and verified the allegations in the complaint and participated in the trial, he was before the court and the defendants were entitled under sec. 263.15 (1), Stats., to have the court grant them such affirmative relief against Sullivan as they demanded in their answer and are entitled to under the facts established by the evidence on the trial of the action. And on their petition under sec. 274.12, Stats., the defendants are entitled on this appeal to have a review of the trial court's "rulings" which denied such affirmative relief.

It follows that the judgment must be affirmed in so far as it provides that plaintiffs are not entitled to specific performance of the contract in the offer to purchase, and are not entitled to recover damages from defendants for breach of contract; and that the defendants do have and recover from the plaintiffs the sum of $106.20 as costs and disbursements of the action; but that in so far as the court's rulings denied the demand in defendants' answer for the return to defendants of the $2,600 deposited by them with Sullivan, the judgment

must be modified by also providing that the defendants do have and recover from Floyd J. Sullivan the sum of $2,600, with interest thereon at the rate of five per cent per annum from November 19, 1948.

*By the Court.*—Judgment affirmed in part as stated in the opinion; and cause remanded with directions to modify the judgment by providing that defendants have and recover from Floyd J. Sullivan the sum of $2,600, with interest thereon as stated in the opinion.

HUGHES, J., dissents.