JAMES J. PARKS COMPANY, APPELLANT AND
CROSS-APPELLEE, V. CHARLES E. LAKIN, APPELLEE
AND CROSS-APPELLANT.
292 N. W. 2d 21

Filed May 6, 1980.　No. 42730.

Monte Taylor of Taylor, Hornstein & Peters, for appellant.

Robert H. Berkshire, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This was an action for specific performance of a repurchase agreement. On November 1, 1970, the plaintiff, James J. Parks Company, purchased 303 acres of citrus grove land from the defendant, Charles Lakin, for $2.52 million, payable in installments over a 10-year period. The land consisted of four separate tracts located in Yuma County, Arizona, and is described in the record as the "Phase II groves." The transaction was conceived as a tax shelter arrangement for the plaintiff, and a repurchase agreement between the parties, entered into on December 15, 1970, was a part of the transaction.

The repurchase agreement provided that the plaintiff could, at its election, require the defendant to repurchase the property upon 30 days' notice. The agreement also granted the defendant an option to repurchase part of the property from the plaintiff. The agreement contained a formula for computing the price in the event either party exercised its option under the agreement. The contracts gave the defendant extensive control over the management and operation of the groves, including the right to approve all expenditures.

On January 1, 1972, the plaintiff sold an undivided one-half interest in the property to 11 investors. The contract of sale, which was approved by the defendant, was in the form of an absolute sale and contained no reference to the repurchase agreement. On this same date, the defendant repurchased a one-eighth interest in the property from the plaintiff. The repurchase transaction did not conform to the terms of the repurchase agreement which the parties had entered into on December 15, 1970, and appar-

ently was independent of the December 15, 1970, agreement.

The January 1, 1972, agreement between the parties made substantial changes in the original November 1, 1970, agreement. The interest rate on the unpaid principal balance was reduced from 10 percent to 8 percent; the defendant was given the right to approve the parties who would pick, pack, and market the fruit; title to the property was to be transferred to a trustee; and the parties agreed, upon request of either party, to form a partnership and convey their interest in the groves to the partnership. The agreement made no reference to the December 15, 1970, repurchase agreement.

A form of partnership agreement was prepared which was executed by both the plaintiff and the defendant. The agreement was not executed by Donald Graham and Maurice Waring, accountants who had been advising the parties throughout their various transactions and who were to be partners under the agreement. Graham and Waring had acquired an interest in the "Phase I" groves from the defendant in November 1971. The purpose of the partnership was to consolidate the undivided interests which the partners held in the Phase I and Phase II groves and facilitate the management and operation of the groves.

Although Graham and Waring did not execute the partnership agreement, all of the parties proceeded as if the partnership were in effect. In January 1973, Graham and Waring purchased the defendant's interest in the groves. The transaction was accomplished by an assignment of the defendant's partnership interest to Graham and Waring. The agreement recited that the partnership existed; that Graham and Waring were purchasing the defendant's partnership interest; that the plaintiff agreed to the assignment; and that Graham and Waring ratified and confirmed the partnership agreement.

The payments due the defendant under the original November 1, 1970, agreement were made through 1975. In 1976, the defendant accepted promissory notes for the principal and interest due. On March 25, 1977, the plaintiff notified the defendant that it was exercising its right under the December 15, 1970, repurchase agreement and demanded that the defendant repurchase the Phase II groves, less the one-eighth interest which the defendant had repurchased in January 1972.

This action was commenced on September 8, 1977, to compel specific performance of the repurchase agreement. The plaintiff claims there is due it from the defendant the sum of $901,801.66, plus the cost of maintaining and operating the groves after April 1, 1977. The defendant cross-petitioned for $1,905,120, the balance due him under the November 1, 1970, agreement, together with interest from November 1, 1977.

The trial court found there were indispensable parties who had not been joined in the action; that the plaintiff had not shown it was able to perform the repurchase agreement; that the parties by their conduct had demonstrated they did not consider the repurchase agreement to be in effect; and that the plaintiff was not entitled to specific performance. On the cross-petition, the trial court found that, since the property was mortgaged and the defendant could not convey a clear title to the property to the plaintiff, the defendant should not recover judgment against the plaintiff. The petition was dismissed with prejudice. The cross-petition was dismissed without prejudice. The plaintiff has appealed. The defendant has cross-appealed.

Specific performance is not generally demandable as a matter of absolute legal right but is addressed to the sound legal discretion of the court. It will not be granted where enforcement of the contract would be unjust. *Tedco Development Corp. v. Overland*

*Hills, Inc.*, 200 Neb. 748, 266 N.W.2d 56 (1978). A party seeking specific performance must show his right to the relief sought, including proof that he is ready, able, and willing to perform his obligations under the contract. *Tedco Development Corp. v. Overland Hills, Inc., supra.*

The right to specific performance may be lost by abandonment of the contract and by conduct inconsistent with the right to relief. *Sofio v. Glissmann,* 156 Neb. 610, 57 N.W.2d 176 (1953). An abandonment of a contract may be effected by acts of one of the parties thereto, which are inconsistent with the existence of the contract and are acquiesced in by the other party. *Sofio v. Glissmann, supra.*

The record fully supports the finding of the trial court that the plaintiff was not entitled to specific performance of the repurchase agreement. There was no tender of performance, other than by allegation in the petition, and the plaintiff failed to show that he could perform his part of the agreement by reconveying the groves to the defendant.

It is not clear from the record what interest the plaintiff now has in the property. The record indicates that persons not identified in the record have acquired an interest in the property. There is evidence that the plaintiff's interest in the Phase I and Phase II groves now does not exceed 12½ percent. Other than the plaintiff, none of the persons who have an interest in the property are parties to the action.

An equitable right may not be properly asserted in an action unless all of the necessary parties have been made parties to the action. *First Nat. Bank of Wayne v. Gross Real Estate Co.*, 162 Neb. 343, 75 N.W.2d 704 (1956).

An indispensable party is one who not only has an interest in the subject matter of the controversy, but who has an interest of such a nature that a final determination cannot be made without affecting his

rights, or leaving the controversy in such condition that the final determination may be wholly inconsistent with equity and good conscience. *Shepoka v. Knopik*, 197 Neb. 651, 250 N.W.2d 619 (1977).

The absence of indispensable parties cannot be waived by the parties to the litigation. *Coker v. Coker*, 173 Neb. 361, 113 N.W.2d 329 (1962); *Cunningham v. Brewer*, 144 Neb. 211, 13 N.W.2d 113 (1944).

The plaintiff has not acquired the interests of the other owners and the evidence does not show that he can acquire their interests. The rights of the other owners are involved in this action and a final determination could not be made without affecting their rights or leaving the controversy in such condition that the determination would be wholly inconsistent with equity and good conscience.

The record sustains the finding that there are indispensable parties who were not joined in the action. Since they are not identified in the record and the extent of their interest is not shown, the problem could not be solved by ordering joinder. Under these circumstances, dismissal of the petition was proper.

The record further sustains a finding that the parties abandoned the repurchase agreement. The evidence shows that, after the sale by the plaintiff of a half interest in the property to the 11 investors on January 1, 1972, the parties no longer considered the repurchase agreement binding. In addition to the facts that have been summarized previously, the defendant testified positively that the sale to the 11 outside investors was a final sale which terminated the options under the repurchase agreement. The conduct of the parties after that time was inconsistent with the existence of the repurchase agreement, but was consistent with the defendant's understanding of the arrangement between the parties. None of the agreements after January 1, 1971, referred to the repurchase agreement. The provisions of the partner-

ship agreement, which was executed by the plaintiff, conflicted with the terms of the repurchase agreement and that partnership agreement was a strong indication that the parties had abandoned any rights that originated in or existed because of the December 15, 1970, repurchase agreement. After the defendant sold his interest in the property in 1973, he no longer participated in the management of the property. Upon the record in this case, the plaintiff had no right to specific performance of the December 15, 1970, repurchase agreement.

With respect to the defendant's cross-petition, the general rule is that title to land is not unmarketable because of an outstanding lien if the lien may be discharged with the purchase money at the time fixed for performance. See *Olson v. Woodhouse*, 112 Neb. 527, 199 N.W. 815 (1924). However, if the encumbrance may not be discharged out of the purchase money, specific performance is not an appropriate remedy. See, 71 Am. Jur. 2d *Specific Performance* § 136 (1973); *Guild v. Atchison, Topeka & Sante Fe Railroad Co.*, 57 Kan. 70, 45 P. 82 (1896).

Although the record indicates that the indebtedness secured by the mortgages upon the property is less than the amount due the defendant under the November 1, 1970, agreement, the terms of the mortgages are not shown in the record. We conclude that the cause should be remanded to the District Court to permit the defendant to make a showing as to whether the indebtedness secured by the mortgages on the property can be discharged out of the purchase money.

That part of the judgment dismissing the petition with prejudice is affirmed; the dismissal without prejudice of the cross-petition is reversed and the cause remanded for further proceedings.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.

CLINTON, J., not voting.