RANDALL E. LANGEMEIER, APPELLEE, V. URWILER OIL & FERTILIZER, INC., AND CARDINAL MART, INC., APPELLANTS.

660 N.W.2d 487

Filed May 2, 2003.   No. S-02-619.

George H. Moyer and Mark A. Keenan, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellants.

Vince Kirby for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This case is before us for the second time. In *Langemeier v. Urwiler Oil & Fertilizer*, 259 Neb. 876, 613 N.W.2d 435 (2000) (*Langemeier I*), we held that the district court for Cedar County was without jurisdiction to determine whether Randall E. Langemeier (Langemeier) was entitled to specific performance of a real estate purchase agreement because of the absence of an indispensable party, Joan Langemeier (Joan), who was disclosed in the record as having an interest in the subject property. We therefore vacated the order of the district court which had granted Langemeier, as seller, specific performance of the agreement and compelled Urwiler Oil & Fertilizer, Inc. (Urwiler Oil), and Cardinal Mart, Inc. (collectively defendants), as buyers, to comply with its terms, and dismissed the appeal. Subsequently, Joan entered an appearance in the case and additional proceedings were held in the district court, after which the court again

ordered specific performance of the agreement. Defendants perfected this appeal from that order.

## FACTS

### *LANGEMEIER I*

The following facts were established by that portion of the record which was before us in *Langemeier I*, 259 Neb. at 877-80, 613 N.W.2d at 436-38, and are therefore reiterated from that opinion:

On June 27, 1995, Langemeier and Urwiler Oil entered into a purchase agreement for the following described real property: "That part of Outlot One (1) of Second Addition to the City of Randolph, Cedar County, Nebraska, described as follows: Beginning at the Northwest corner of Block 2, Second Addition; Thence North 134 feet to the point of beginning; Thence East at right angles 162 feet; Thence South at right angles 18 feet; Thence East at right angles 150 feet; Thence North at right angles 230 feet to the South line of Federal Highway No. 20; Thence Southwesterly along the South line of Federal Highway No. 20; Thence to a point where the East line of Cedar Street in the City of Randolph, as extended North, intersects the South line of Federal Highway No. 20; Thence South along the East line of Cedar Street to the point of beginning, all in the City of Randolph, Cedar County, Nebraska." Langemeier operated a convenience store on the foregoing described property, sometimes referred to as the "Mini Mart." The purchase agreement included all fixtures on the property together with all personal property "on premises on date of acceptance of [the purchase] agreement—list to be attached." The purchase agreement which appears in the record does not have attached to it a list identifying the personal property. The sale price was $125,000, with a $1,000 downpayment, leaving a purchase price balance of $124,000. The sale was conditioned on Langemeier's having marketable title, in fee simple, and Langemeier's conveyance of title to Urwiler Oil by warranty deed "free and clear of all liens, encumbrances or special taxes levied or assessed."

Pursuant to the purchase agreement, Langemeier agreed to furnish to Urwiler Oil, within 15 days from the date of acceptance of the purchase agreement, either a complete, certified abstract of title or title insurance. Urwiler Oil agreed to deliver, 15 days thereafter, a copy of an attorney's opinion showing any defects in the title. Urwiler Oil further agreed under the purchase agreement to close the sale within 30 days of the delivery of the title abstract or title insurance, unless defects were found, or, in the event defects were found, within 10 days of the curing of such defects.

On June 19, 1995, a title insurance commitment was prepared on the subject property. The commitment listed several matters with regard to the title, summarized as follows:

(1) Langemeier and Vickie Langemeier were divorced on May 24, 1984, and Langemeier claimed to have been awarded the convenience store and the property on which it was situated in the divorce decree. The title insurance company required a quitclaim deed from Vickie Langemeier because the real property awarded to Langemeier in the Langemeiers' divorce decree was identified by only a general description and not by a legal description.

(2) On February 7, 1989, Rodney Zwygart had sued Langemeier, claiming to be Langemeier's business partner with an undivided one-half interest in the partnership's assets. In the lawsuit, Zwygart sought a division of partnership assets, which assets allegedly included the convenience store. The title insurance company refused to issue title insurance against the litigation, which litigation it considered an exception to title insurance because the litigation had not reached a judgment.

Counsel for Urwiler Oil received a copy of the title insurance commitment on or about June 20, 1995. No written attorney's opinion was sent to Langemeier by Urwiler Oil identifying title defects in the property that was the subject of the purchase agreement, although representatives of defendants testified that they had numerous conversations with Langemeier and his attorney about resolving the matters raised in the title insurance commitment, including the pending litigation case, Zwygart v. Langemeier, Cedar

County District Court, docket No. 29, page 45, which matters they believed created clouds on the title.

On August 4, 1995, Zwygart filed a notice of lis pendens. The notice set forth that Zwygart claimed an interest in the real estate described in the notice, which interest was the subject of the pending lawsuit between Zwygart and Langemeier. The notice contained a faulty legal description of the property which was the subject of the purchase agreement.

Cardinal Mart was incorporated as a Nebraska corporation on or about August 15, 1995. Of Cardinal Mart's three shareholders, two are also shareholders in Urwiler Oil. Cardinal Mart took possession of the real estate described in the purchase agreement on August 15 and began operating the convenience store. As of August 15, Langemeier ceased to operate or do business as the Mini Mart.

A closing on the purchase agreement was scheduled for August 18, 1995, but Langemeier did not appear at the closing because he understood it was cancelled due to the existing clouds on the title. Representatives of defendants, however, did appear at the scheduled closing. No closing took place on the purchase agreement on August 18 or subsequent thereto. In August and September, nominal payments were made by Cardinal Mart to Langemeier, which payments Cardinal Mart's representatives described as rent payments. Witnesses testified at trial that the parties continued to discuss the sale and the title matters during August, September, and October.

On October 17, 1995, defendants' counsel notified Langemeier by letter that defendants were rescinding their offer to purchase the property described in the purchase agreement. On November 22, counsel for defendants notified Langemeier that on November 22, defendants had terminated their day-to-day tenancy of the convenience store and had removed or assigned to Cardinal Mart all inventory.

On November 9, 1995, Langemeier filed his petition for specific performance of the purchase agreement against defendants. On December 1, 1998, and continuing on December 2, a bench trial was held on Langemeier's

amended petition filed on March 11, 1996, together with Urwiler Oil's second amended answer to the petition, filed June 22, and Cardinal Mart's fourth amended answer to the petition, filed August 27, 1998.

Langemeier admitted at trial on December 1, 1998, that he no longer owned the property described in the purchase agreement, which is the subject of the instant action, and that the property was owned by his mother, [Joan]. Langemeier testified, however, that he could carry out the terms of the purchase agreement and transfer title to the property the same day or the very next day. The record is unclear when Joan Langemeier acquired title to the property. Joan was not then a party to the case.

With respect to the divorce decree, Langemeier testified that on August 15, 1995, an order nunc pro tunc had been entered by the district court in the divorce action, which order identified the real property awarded to Langemeier under the divorce decree using legal descriptions, including the property on which the convenience store was located. The record suggests that the nunc pro tunc order may have been issued without notice to Vickie Langemeier.

With respect to the Zwygart litigation, Langemeier testified that the litigation was resolved in December 1995. The record does not contain evidence other than Langemeier's testimony that the Zwygart lawsuit has been concluded.

Other witnesses testified that subsequent to the filing of the petition for specific performance, a federal tax lien and a judgment lien had been placed on the real estate that was the subject of the purchase agreement. The record further indicates that a mortgage on the real estate had been foreclosed and that the property had been sold. . . . Langemeier [testified at the first trial that he] had redeemed the property from the foreclosure sale, evidently with funds supplied by his mother, [Joan].

### SUBSEQUENT PROCEEDINGS

As noted above, in *Langemeier I*, we vacated the district court's order granting specific performance, based upon our determination that Joan was an indispensable party who had not been joined in the action. We concluded that "[i]n the absence of

an indispensable party, the district court is without jurisdiction to determine the controversy." *Langemeier I*, 259 Neb. at 884, 613 N.W.2d at 440. Following issuance of our mandate, a "Voluntary Appearance and Consent to Judgment" was filed by Joan in which she stated that she is the record owner of the subject property and agreed that the district court "may enter judgment for or against the plaintiffs, and further agrees to be bound thereby as if made a party prior to the trial of this matter."

At a subsequent hearing, the district court took judicial notice of the record made at the previous trial. Both parties submitted additional evidence. Joan testified that she is the mother of Langemeier. She testified that she is the owner of the subject property and that she obtained title to that property "in the court thing." Joan testified that she obtained title by warranty deed. Joan was asked,

> Would you be willing to give a warranty deed to whomsoever that specific performance is granted? Would you be willing and are you able to give a warranty deed, to execute a warranty deed, to that property whereby you would warrant the title to the defendant against all claims presently existing?

Joan answered "[y]es." Defendants then offered evidence that the economic viability of the Mini Mart had significantly decreased since 1995.

On May 13, 2002, the district court entered an order granting Langemeier specific performance of the contract as written. The order stated that "upon payment of the sums due, the plaintiff shall furnish a warranty deed conveying the described property to the defendants or their order, as required by the Purchase Agreement."

## ASSIGNMENTS OF ERROR

Defendants assign that the trial court erred by (1) granting specific performance of the purchase agreement, (2) deciding that Langemeier's title was marketable, (3) deciding that Langemeier had tendered performance of the contract for the sale of real estate, and (4) failing to find that it would be inequitable and unfair to compel specific performance nearly 7 years after performance was due from Langemeier.

## STANDARD OF REVIEW

An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Langemeier I*; *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996).

## ANALYSIS

In undertaking our independent review of the legal and factual issues presented in this appeal, we are guided by certain general principles. Specific performance is not generally demandable as a matter of absolute legal right but is addressed to the legal discretion of the court. It will not be granted where enforcement of the contract would be unjust. *James J. Parks Co. v. Lakin*, 206 Neb. 184, 292 N.W.2d 21 (1980); *Tedco Development Corp. v. Overland Hills, Inc.*, 200 Neb. 748, 266 N.W.2d 56 (1978). A party seeking specific performance must show his or her right to the relief sought, including proof that the party is ready, able, and willing to perform his or her obligations under the contract. *Id.* The right to specific performance may be lost by abandonment of the contract and by conduct inconsistent with the right to relief. *James J. Parks Co. v. Lakin, supra*; *Sofio v. Glissmann*, 156 Neb. 610, 57 N.W.2d 176 (1953).

In *Langemeier I*, we held that the absence of Joan as a party to the action was a jurisdictional defect which prevented the district court from reaching the merits of the controversy. Now that Joan has entered an appearance, we are presented with a substantive issue which we did not and could not reach in *Langemeier I*: whether an action for specific performance of a real estate purchase agreement will lie where, subsequent to the execution of the agreement, the seller has conveyed the property to a third party with whom the purchasers have no contractual relationship. In their brief, defendants argue that while Nebraska law is unclear on this point, the law of other jurisdictions resolves the issue in the negative.

Neither the parties' briefs nor our research has disclosed any controlling Nebraska authority on this point, although there is language in *James J. Parks Co. v. Lakin, supra*, which suggests

that conveyance to a third party by the seller may not absolutely preclude the remedy of specific performance against the purchaser under a contract. In that case, the plaintiff had purchased 303 acres of Arizona citrus grove from the defendant, subject to a repurchase agreement. Subsequently, the plaintiff sold an undivided one-half interest in the property to 11 investors, and at the same time, the defendant repurchased a one-eighth interest in the property. Approximately 5 years later, the plaintiff sought specific performance of the original repurchase agreement with respect to all of the property except that which the defendant had already repurchased. The district court denied the relief requested, in part because of a failure to join indispensable parties who were not identified in the record. In affirming, we stated:

> The plaintiff has not acquired the interests of the other owners and the evidence does not show that he can acquire their interests. The rights of the other owners are involved in this action and a final determination could not be made without affecting their rights or leaving the controversy in such condition that the determination would be wholly inconsistent with equity and good conscience.

*James J. Parks Co. v. Lakin*, 206 Neb. at 189, 292 N.W.2d at 25.

■ This language is susceptible to an interpretation that specific performance could be awarded if all persons having an interest in the property were made parties and jointly requested relief, or if the seller under the contract could prove that he or she was able to reacquire the portion of the property conveyed to third parties in order to perform on the contract with the purchaser. However, the language is at best dicta and is contrary to what we perceive as the majority rule in other jurisdictions. According to 71 Am. Jur. 2d *Specific Performance* § 147 at 151 (2001):

> Since the vendor in a land contract is not entitled to compel the vendee's specific performance of the contract where the vendor has a defective title, he or she obviously is not entitled to the remedy of specific performance against the vendee where he or she has no title whatever. The vendor in a land contract who, subsequently to its execution, has conveyed a substantial part of the property covered by the contract to a third person who is a bona fide purchaser, cannot enforce specific performance of the contract to sell . . . . Nor

does he or she become entitled to specific performance by acquiring options to repurchase the land so conveyed.

The circumstance in which a seller seeking specific performance asserts the ability to reacquire property conveyed to a third party in order to perform the original contract was addressed in *Suburban Improvement Co. v. Scott Lumber Co.*, 67 F.2d 335 (4th Cir. 1933). In that case, the defendant contracted to buy certain lots from the plaintiff. One of the provisions of the contract provided that the plaintiff could not sell any of the lots to any other person without the consent of the defendant. After the contract was executed, the plaintiff sold some of the lots to third parties. Prior to the time the plaintiff's action for specific performance was heard, the plaintiff obtained options from all persons to whom conveyance had been made and averred its ability to acquire title and make conveyance under the terms of the contract. Notwithstanding this, the court held that the plaintiff was not entitled to specific performance of the contract. The court reasoned that by conveying the lots, the plaintiff both rendered itself unable to perform the contract and violated one of the express provisions of the contract. The court further found that even if no express provision in the contract had been violated, "it has been repeatedly held that a vendor cannot enforce specific performance, where subsequent to the execution of the contract he has conveyed a substantial part of the property therein embraced to a third person." *Id.* at 338. In addressing whether the plaintiff's acquisition of the options to repurchase nevertheless placed it in a position to perform prior to the decree, the court held that any reacquisition of the property could not "wipe out" the breach of the contract that had already occurred. *Id.*

Other courts have held that a purchaser cannot be required to accept title from a third party, even if that title is valid. *Ross v. Kunkel*, 257 Wis. 197, 43 N.W.2d 26 (1950); *Marx v. King*, 193 Iowa 29, 186 N.W. 680 (1922). According to *Marx*, a "rule of general, if not universal, acceptance is that a purchaser cannot be required to accept a conveyance from a third person, even though a good title is thereby conveyed, unless it is so stipulated in the contract." 193 Iowa at 33, 186 N.W. at 682. *Ross* explains that this proposition is applied because " '[t]he personal responsibility of the grantor may or may not become valuable to the grantee

in the event of a breach of the warranties or of the terms and conditions of the deed.' " 257 Wis. at 204, 43 N.W.2d at 30.

In the instant case, it is undisputed that Langemeier conveyed his interest in the subject property to Joan prior to the trial of this action. It is therefore unnecessary to decide the contested factual issue of whether Langemeier was able to perform his obligations under the purchase agreement prior to that conveyance, because he clearly was unable to do so after divesting himself of title. Joan was neither a party nor a third-party beneficiary of the purchase agreement and therefore has no standing to seek enforcement by specific performance. See *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996). Moreover, defendants did not contract to purchase the subject property either directly or indirectly from Joan. We conclude that under these factual circumstances, Langemeier's conveyance of the subject property to Joan was an act inconsistent with the purchase agreement which precludes the remedy of specific performance.

## CONCLUSION

Based upon our de novo review of the record, we conclude that Langemeier is not entitled to specific performance of the real estate purchase agreement dated June 27, 1995, for the reasons discussed herein. The judgment of the district court is therefore vacated, and the cause is remanded with directions to dismiss the action.

JUDGMENT VACATED, AND CAUSE REMANDED
WITH DIRECTIONS TO DISMISS.

GERRARD, J., not participating.