16 Neb. App. 379
JENNIFER LYNN HONGSERMEIER, APPELLEE,
v.
RONALD D. DEVALL AND TONYA L. DEVALL, HUSBAND AND WIFE, APPELLANTS.
No. A-06-521.
Court of Appeals of Nebraska.
Filed February 5, 2008.
Patrick A. Brock, of Cunningham, Blackburn, Francis, Brock & Cunningham, for appellants.
Tanya J. Janulewicz, of Leininger, Smith, Johnson, Baack, Placzek, Steele & Allen, for appellee.
IRWIN, SIEVERS, and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Ronald D. Devall and Tonya L. Devall, husband and wife, appeal from an order of the district court for Hamilton County, which granted summary judgment in favor of Jennifer Lynn Hongsermeier. The court found that Jennifer had a valid right of first refusal with regard to any offer to purchase certain real property and that the Devalls were not good faith purchasers of the property in question. The court ordered the Devalls to convey the property to Jennifer upon receipt from her of consideration consistent with the terms of the right of first refusal. For the reasons set forth herein, we affirm.

BACKGROUND
In February 2003, Jennifer; her father, Ivan Hongsermeier; and her uncle, Wayne Hongsermeier, entered into a memorandum of understanding. The memorandum was apparently part of an agreement between Ivan and Wayne to dissolve a partnership between them. As part of the agreement, the tract of real estate in Hamilton County that is subject to this lawsuit was conveyed to Wayne. The conveyance to Wayne was subject to a 10-year lease with Jennifer as lessee, which lease required Jennifer to pay the real estate taxes on the property. Jennifer was also granted a right of first refusal with respect to the real estate as follows:
In the event that Wayne, or any person or persons claiming from Wayne, receive a bona fide offer for the purchase of their interest in the property described above and desire to accept the same, they shall notify Jennifer, in writing, of the receipt of such offer, and Jennifer shall have thirty (30) days in which to notify the party desiring to sell his or her interest in the subject property of her desire to purchase the subject property upon the same terms and conditions as the bona fide offer. In the event that Jennifer exercises her right of first refusal within the time herein provided, the party desiring to sell his or her interest in the subject real estate shall convey marketable title to Jennifer upon the same terms and conditions as the bona fide offer. In the event that Jennifer does not exercise her right of first refusal within the time provided hereinabove, the party desiring to sell his or her interest in the subject property may proceed to sell his or her interest in the subject real estate pursuant to the terms and conditions of the bona fide offer, without further restriction.
Wayne and Jennifer entered into a written 10-year farm lease for the property on May 2. Jennifer's right of first refusal was also set forth in the farm lease. The memorandum of understanding was filed of record with the Hamilton County clerk on November 22, 2004.
On October 15, 2004, Wayne entered into a purchase agreement with David Dalton and Teresa Dalton for sale of the property for $185,000. Wayne's real estate broker, Melvin Meyer, was made aware of Jennifer's lease and right of first refusal at the time. Jennifer was notified of this offer. Ultimately, Jennifer did not have the financial resources to meet the Dalton offer, but the Daltons still declined to complete the transaction due to Jennifer's existing leasehold interest.
On December 9, 2004, Wayne and the Devalls entered into an agreement to purchase the property for $181,500. Under the terms of the Devall agreement, closing was to occur on January 28, 2005. Prior to closing, the Devalls became aware of the farm lease and the contents of the memorandum of understanding. Because the Devalls were concerned about the leasehold interest, they negotiated a lower price with Wayne of $160,000. Jennifer's attorney, Galen Stehlik, sent a letter to Meyer dated January 27, 2005, which stated:
I wanted to communicate with you, in writing, and advise you that Jennifer ... did not exercise her right of first refusal with the respect to [sic] real estate you have listed for Wayne .... Accordingly, the Right of First Refusal that appears in the matter of public record has not been exercised, and the property can be sold without any further reference to the Right of First Refusal.
On January 28, the Devalls closed the transaction and received a joint tenancy warranty deed to the premises, which deed was filed of record on February 1.
The Devalls sent Jennifer a letter, dated March 11, 2005, demanding rent for the farm ground and informing Jennifer that the Devalls would be making certain improvements to the property. Between January 20 and March 31, the Devalls invested approximately $31,000 in the property. Stehlik sent a letter to the Devalls, dated March 29, 2005, notifying the Devalls of Jennifer's intention to exercise her right of first refusal.
Jennifer filed a complaint in the district court on April 7, 2005. Among other things, Jennifer alleged that the purchase offer made by the Devalls was never presented to her; that she never had an opportunity to respond to the Devall offer, contrary to the memorandum of understanding; and that the Devalls knew of the existence of Jennifer's right of first refusal but took no efforts to make their offer known to Jennifer. Jennifer alleged that the Devalls purchased the property subject to easements and restrictions of record and that her right of first refusal constituted a restriction of record. Jennifer stated that she had communicated to the Devalls her desire to purchase the property under the same terms and conditions as those of their offer to Wayne, but that the Devalls had refused to honor her right of first refusal. Jennifer asked the court to find that her right of first refusal constituted a restriction of record against the real estate. Jennifer sought an order directing the Devalls to convey title to Jennifer upon receipt of the consideration offered by the Devalls to Wayne and quieting title to the property in Jennifer. Jennifer also sought injunctive relief, which is not relevant to the issues on appeal.
In an amended answer, filed February 17, 2006, the Devalls alleged, among other things, that they were unaware of the memorandum of understanding and that they relied upon Stehlik's representation that Jennifer was not exercising the right of first refusal contained in the farm lease. The Devalls also alleged that they had made improvements to the real property which had increased its value and for which they should be compensated through a lien on the property for the value of the improvements.
Jennifer filed a motion for summary judgment on February 17, 2006, which motion was heard by the district court on March 2. Evidence submitted at the hearing included the depositions of Meyer (the real estate broker who brokered the transaction), Stehlik (Jennifer's previous attorney), and Beverly Hess (the real estate broker who represented the Devalls), as well as certain deposition exhibits and affidavits of the parties. We will set forth the evidence admitted at the hearing as it relates to the question of whether the Devall offer was made known to Jennifer prior to closing and the question of improvements made on the property by the Devalls.
In an affidavit, Jennifer stated that she did not exercise her right of first refusal with respect to the Dalton offer and that during December 2004 and continuing through January 14, 2005, Wayne attempted to buy out Jennifer's lease interest in the property for a cash payment. No agreement was ever reached between Jennifer and Wayne concerning a buyout of the lease. Jennifer stated that she never discussed any need with Stehlik nor authorized Stehlik to provide a letter to Wayne's real estate agent regarding her right of first refusal. When Jennifer received a copy of Stehlik's letter to Meyer on January 28, 2005, she called Stehlik to question why the letter had been prepared. Jennifer learned that the real estate had been sold to someone other than the Daltons sometime after February 1, and she averred that prior to that date, she had never been provided with either verbal or written notification regarding a proposed sale to someone other than the Daltons. Upon learning that the real estate had been sold, Jennifer made inquiries to find out the identity of the purchasers. Jennifer stated that she did not receive any communication from Wayne, the Devalls, or anyone on their behalf until the March 11 letter from the Devalls. Finally, Jennifer stated that on January 28, and through the date of her affidavit, February 15, 2006, she had the ability to exercise a right of first refusal to purchase the real estate in question "upon the same terms and conditions" as those upon which the real estate was purchased by the Devalls.
Meyer testified by deposition. Meyer testified that Jennifer was told that the Dalton contract had fallen through, but he did not recall when she was told. Meyer testified that either he or Wayne let Jennifer know, but Meyer did not recall telling Jennifer himself. However, Meyer did not think that either he or Wayne gave Jennifer notice of the second offer, the offer from the Devalls. Meyer did not recall giving Stehlik a copy of the Devall offer. Meyer thought he called Stehlik and requested a letter, but he testified that he probably did not know whether Stehlik knew that an offer for $181,500 had been received. Meyer was unable to state whether Stehlik had been provided a copy of an addendum to the Devall purchase agreement, which addendum lowered the price to $160,000, prior to when Stehlik wrote the letter to Meyer regarding Jennifer's right of first refusal. Meyer testified, in fact, that the final purchase price between Wayne and the Devalls was not negotiated until Stehlik's letter had been received.
Upon cross-examination, Meyer testified that he gave notice of the Devall offer to Wayne but that he did not give notice of that offer to Jennifer. Meyer was asked specifically whether he knew if Wayne told Jennifer that there was another offer. Meyer responded that he doubted Wayne did so, because he did not think that Wayne and Jennifer were speaking. Meyer did not believe it necessary to notify Jennifer of the Devall offer, because of the letter from Stehlik. Meyer testified that when he called Stehlik, he asked whether every time there was an offer on the property, "we had to go back to [Jennifer] and get another right of refusal." When asked whether he had asked Stehlik to address any specific questions in the letter, Meyer responded, "I just asked Stehlik if we had to go back every time and if he'd give me a letter to that effect. And that's what I received." Meyer confirmed his earlier testimony that he did not think he told Stehlik that he was calling in reference to another offer on the property. Meyer testified that in their conversation, Stehlik did not tell him that Stehlik would have to check with Jennifer before sending the letter. Meyer represented to the Devalls, at the time of closing, that Stehlik's letter "clear[ed] up the problem."
Stehlik also testified by deposition. Stehlik testified that Jennifer provided him with a copy of the Dalton offer to purchase the property for $185,000 and that Jennifer did not exercise her right of first refusal with respect to the Dalton purchase offer. Stehlik testified further that subsequently to the Dalton offer, he was not advised of any other purchase offers on the property. Stehlik specifically testified that he was not made aware that the Daltons had backed out of their offer to purchase the property. Concerning the telephone call he received from Meyer, Stehlik stated that Meyer wanted him to "generate a letter that said that Jennifer did not exercise her option or did not exercise the right of first refusal as set forth in the lease." Testifying that Meyer called on January 27, 2005, Stehlik stated, "He said he needed a letter indicating that Jennifer did not exercise her right of first refusal. That's all he said." Stehlik did not believe that Meyer discussed with him whether Jennifer had to be contacted every time an offer was received. Stehlik stated that neither Meyer nor Jennifer ever told him that there was another offer on the property. Stehlik testified that when Meyer called him, he assumed that the Dalton offer was the only offer in existence and that Jennifer did not have the financial resources to meet that offer. Stehlik generated his letter to Meyer based on this assumption. Stehlik testified that Meyer had expressed some urgency in his conversation about the letter and had indicated that he would pick the letter up from Stehlik. Stehlik did not recall whether he spoke to Jennifer before generating the letter, but he did testify that she called him after receiving a copy of the letter. Stehlik testified that he did not become aware of the Devall offer on the property until sometime in February 2005, after the closing date. Stehlik testified as to his understanding of Jennifer's right of first refusal, stating that he understood the documentation to require that "any subsequent offer needed to first be run by Jennifer." Stehlik thought that he called Meyer in approximately March, sometime after learning about the Devall offer, and that Meyer "kind of gave the impression that he didn't feel like he had to keep on going back to Jennifer."
Hess, the real estate broker who represented the Devalls, testified in her deposition that prior to the closing of the sale to the Devalls, no one communicated to her anything to indicate that Jennifer was not in agreement with waiving her right of first refusal. Hess stated that Meyer represented that the letter from Stehlik applied to the Devall transaction. Hess testified that Jennifer called her after the closing and told Hess that Jennifer had never given Stehlik permission to generate the letter to Meyer. Hess and the Devalls became aware prior to closing that Jennifer was a tenant on the property, but neither Hess nor the Devalls contacted Jennifer prior to closing. Hess testified that as soon as she found out about the right of first refusal, she asked Meyer to obtain something to indicate that Jennifer was signing off on the purchase. Hess agreed that the letter obtained was not signed by Jennifer, but she testified that she trusted that Jennifer's attorney, Stehlik, had signed the letter. Hess did not make a copy of the purchase agreement between the Devalls and Wayne or the addendum to that agreement available to Jennifer. Hess thought that information concerning the Devall offer for $181,500 had been made available to Jennifer, but she did not confirm that this was done.
An affidavit from Ronald Devall was received into evidence. Ronald stated that on January 28, 2005, prior to closing, he received a copy of the letter from Stehlik to Meyer indicating that Jennifer did not wish to exercise her right of first refusal with respect to the property. Ronald stated that Meyer represented to him that Stehlik's letter was in direct reference to the Devall offer to purchase the property. Ronald stated further that he was never given any indication or acknowledgment from anyone of Jennifer's not having been aware of the Devall offer to purchase the property and that the Devalls were assured by Wayne and Meyer that the Stehlik letter satisfied their concerns relative to the farm lease and the right of first refusal. With these assurances, Ronald assumed that Jennifer was aware of the circumstances of the Devalls' purchase of the property and felt no further need to communicate with Jennifer personally. Prior to closing, Ronald was advised that Jennifer was aware of the Dalton offer for $185,000, and he was advised by Wayne prior to closing that Jennifer did not have the financial resources to meet the Dalton offer and would not have the financial resources to meet the $181,500 offer being submitted by the Devalls. Wayne also advised Ronald that once the Devalls purchased the property, the Devalls could develop the property as they wished without being in violation of the farm lease. Ronald stated that he purchased the property in order to construct some additional buildings and to run his trucking business from the property. Ronald detailed the improvements he made on the property between January 28, when he took possession of the property, and March 31, when he received the letter indicating that Jennifer wished to exercise her right of first refusal, and he stated that the improvements cost approximately $31,117.63. Ronald stated that the improvements had increased the value of the property in general and in particular had substantially increased the value of the residence on the property. Ronald stated that the improvements were made under the assumption that the Devalls were the lawful owners of the property.
The district court entered an order on April 5, 2006, granting Jennifer's motion for summary judgment. The court found that Jennifer possessed a valid right of first refusal on the property in question and that the Devalls closed on the transaction despite having actual and constructive notice of Jennifer's right. The court found that Wayne was required to notify Jennifer in writing of the offer and give her an opportunity to buy under the same terms, which, in this case, the court found to be the amount of $160,000. The court found that the Devalls were not good faith purchasers of the real estate. The court addressed the Devalls' contention that Jennifer was not entitled to summary judgment because she did not have the ability to complete the sale. The court noted Jennifer's affidavit, wherein Jennifer stated that on January 28, 2005, she did have the ability to purchase the property. The court found the statements in the record that Jennifer did not have the financial ability to complete a purchase under the terms of the Dalton agreement to be irrelevant to the question of whether she had the ability to make a purchase meeting the terms of the Devall offer. The court granted Jennifer's motion for summary judgment and ordered the Devalls to convey the premises to Jennifer upon receipt from her of $160,000. The court also stated that any request for relief by any party not specifically granted by the court's order was denied. Subsequently, the Devalls perfected their appeal to this court.

ASSIGNMENTS OF ERROR
The Devalls assert, consolidated and restated, that the district court erred in (1) granting Jennifer's motion for summary judgment, (2) finding that Jennifer could acquire the property for $160,000, and (3) failing to consider and address the Devalls' claim that their improvements to the property unjustly enriched Jennifer.

STANDARD OF REVIEW
[1] An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. Langemeier v. Urwiler Oil & Fertilizer, 265 Neb. 827, 660 N.W.2d 487 (2003).
[2,3] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Johnson v. Knox Cty. Partnership, 273 Neb. 123, 728 N.W.2d 101 (2007). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS

Jennifer's Right of First Refusal.
[4] A right of first refusal, rather than an option to purchase real estate, is created by an agreement which (1) contains no terms or conditions of sale; (2) fails to indicate that the party interested in purchasing real estate has an absolute right to demand conveyance of the property at any time prior to the owner's decision to sell it; and (3) implements the word "first" to indicate that if the owner decides to sell the real estate, he or she is compelled to offer it first to the other party to the agreement. Winberg v. Cimfel, 248 Neb. 71, 532 N.W.2d 35 (1995). The parties do not question that what was created in the memorandum of understanding and the farm lease was a right of first refusal. The right created provides that if Wayne received an offer for purchase of his interest in the property which he wanted to accept, he was required to notify Jennifer in writing of the offer, after which notification Jennifer would have 30 days in which to exercise her right under the same terms and conditions as those of the offer. Although there is some dispute in the record as to whether Jennifer was aware prior to January 28, 2005, that the Daltons were no longer interested in purchasing the property, the record contains no evidence to suggest that Wayne presented either of the Devall offers to Jennifer, orally or in writing, at any time prior to January 28. There is no dispute in the record that the Devalls, Hess, and Meyer did not inform Jennifer of the Devall offer. Although Meyer requested a letter from Stehlik concerning Jennifer's exercise of her right, the record shows that Meyer did not inform Stehlik his request was in reference to the Devall offer and shows that Stehlik did not communicate with Jennifer prior to drafting and sending out the letter. While the Devalls may have relied on Stehlik's letter and the assurances of Meyer and Wayne in closing the transaction, without evidence that the Devall offer had been presented to Jennifer, Stehlik's letter did not act as an effective waiver of Jennifer's right relative to the Devall offer. The district court found no genuine issue of material fact concerning Jennifer's entitlement to be notified of the Devall offer and the lack of notice to her, and we find no error in this finding.

Devalls Were Not Good Faith Purchasers.
[5] The district court determined that the Devalls were not good faith purchasers of the real property. A good faith purchaser of land is one who purchases for valuable consideration without notice of any suspicious circumstances which would put a prudent person on inquiry. Caruso v. Parkos, 262 Neb. 961, 637 N.W.2d 351 (2002).
[6] The Nebraska Supreme Court has stated, "`The general rule is that a purchaser of real estate takes subject to outstanding equitable interests in the property, which are enforceable against him to the same extent they are enforceable against the vendor, where the purchaser is not entitled to protection as a bona fide purchaser ...'" Winberg v. Cimfel, 248 Neb. at 80, 532 N.W.2d at 41, quoting Westpark, Inc. v. Seaton Land Co., 225 Md. 433, 171 A.2d 736 (1961).
Where the holder of an option exercises his or her rights thereunder and makes a purchase of real estate covered by the option, his or her act will relate back to the time of giving the option so as to cut off the rights of all persons who, with knowledge of the option, acquired subsequent interests in the land. Therefore, a holder of an option to purchase real property, given for a valuable consideration and duly accepted, may, under the prevailing rule, maintain a suit for specific performance against one purchasing the property with notice of the option.
Specific performance will not, however, be decreed against third persons who become purchasers for value of property in ignorance of the option or contract. Furthermore, an option to purchase lands, unsupported by a valuable consideration, is not an interest therein which a purchaser for value is bound to notice or which equity will regard, and the want of mutuality may be urged as a bar to its specific enforcement.
71 Am. Jur. 2d Specific Performance § 188 at 200 (2001). See, also, Beard v. Morgan, 143 Neb. 503, 512, 10 N.W.2d 253, 258 (1943) ("`[a] purchaser with notice is liable to the same equity, stands in his place, and is bound to do that which the person he represents would be bound to do by the decree. He takes the estate subject to the charge, and stands in the place of his vendor").
[7,8] The burden of proof is upon a litigant who alleges that he or she is a good faith purchaser to prove that he or she purchased the property for value and without notice; this burden includes proving that the litigant was without notice, actual or constructive, of another's rights or interest in the land. Caruso v. Parkos, supra. To qualify as a bona fide purchaser of land, one must actually have paid the purchase money before he or she received notice of a claim against the land. Winberg v. Cimfel, 248 Neb. 71, 532 N.W.2d 35 (1995). It is uncontradicted that the Devalls became aware of Jennifer's right of first refusal prior to the January 28, 2005, closing date. Accordingly, the Devalls were not good faith purchasers and were bound by Jennifer's right of first refusal. See id.

Jennifer's Exercise of Right of First Refusal.
The Devalls argue that there are issues of material fact concerning the terms under which Jennifer could exercise her right. We disagree. The record is clear that Wayne initially accepted the Devall offer to purchase the property for $181,500, but that when he was unable to buy out the farm lease held by Jennifer, he agreed to give the Devalls a credit of $21,500 at the time of closing in return for accepting the terms of the existing farm lease. In other words, in exchange for not having to buy out the farm lease, Wayne agreed to accept a purchase price in terms of actual dollars received of $160,000. The district court found that the terms of the Devall offer were for a purchase price of $160,000 and that Jennifer should be given the opportunity to purchase the property under those terms. The right of first refusal given to Jennifer specifies that she be given the right to purchase Wayne's interest in the property under the same terms and conditions as those of any offer accepted by Wayne for the sale of his interest in the property. Even if Jennifer had been notified of the $181,500 offer and had chosen not to exercise her option relative to that offer, she still was entitled to notice of the $160,000 offer and had the right to exercise her option relative to that offer as well. We find no error in the district court's findings as to the terms under which Jennifer could exercise her right of first refusal.
[9-11] The Devalls present certain arguments as to whether there are issues of material fact concerning Jennifer's financial ability to perform under the right of first refusal. A party seeking specific performance must show his or her right to the relief sought, including proof that the party is ready, able, and willing to perform his or her obligations under the contract. Langemeier v. Urwiler Oil & Fertilizer, 265 Neb. 827, 660 N.W.2d 487 (2003). In her affidavit, Jennifer stated that on January 28, 2005, and through the date of her affidavit, she had the ability to exercise her right of first refusal under the terms and conditions of the Devall offer. A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Pogge v. American Fam. Mut. Ins. Co., 272 Neb. 554, 723 N.W.2d 334 (2006). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. Id. The Devalls presented no direct evidence to contradict the assertion in Jennifer's affidavit, only pointing to evidence that Jennifer was unable to meet the financial requisites of the Dalton offer. We agree with the district court's conclusion that Jennifer's financial inability to purchase the property at the time of the Dalton offer under the terms of the Dalton offer is irrelevant to the question of whether in January 2005 she was financially able to complete a purchase under the terms of the Devall offer.
Viewing the evidence in the light most favorable to the Devalls and giving them the benefit of all reasonable inferences deducible from the evidence, as we must, we conclude that the district court did not err in granting summary judgment in Jennifer's favor.

Improvements Made by Devalls.
The Devalls assert that the district court erred in failing to consider and address their claim that their improvements to the property unjustly enriched Jennifer. Although the court's summary judgment order did not specifically address this claim by the Devalls, the court indicated that it was denying any request for relief not specifically granted by its order.
[12,13] As a general rule, in order that one may recover compensation for improvements made on another's land, as equitable relief, three concurrent elements must be shown to exist: (1) The occupant must have made the improvements in good faith; (2) he must have been in possession, actual or constructive, adversely to the title of the true owner; and (3) his possession must have been held under color or claim of title. Williams v. Beckmark, 150 Neb. 100, 33 N.W.2d 352 (1948). An occupant of land is not a possessor in good faith and hence is not entitled to compensation for improvements which he makes thereon after he has notice or knowledge that his title is defective, or notice or knowledge of an adverse title or claim to the property in another. See id. See, also, Neb. Rev. Stat. § 76-301 et seq. (Reissue 2003) (enacted with respect to occupying claimants).
Because the Devalls made the improvements with knowledge of the lease and right of first refusal, they were not entitled to recover on their claim. We find no error in the denial of the Devalls' claim for compensation for improvements made to the property.

CONCLUSION
The district court did not err in granting summary judgment in Jennifer's favor or in denying the Devalls' claim with respect to improvements made to the property.
AFFIRMED.